**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **PAUL STEVEN MAESTAS,** ) | |
| ) | |
|       **Plaintiff,** ) | Case No. EDCV 10-1218 AJW |
| ) | |
|       v. ) | **MEMORANDUM OF DECISION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
|       **Defendant.** ) | |
| _____) | |

      Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

      On December 3, 2007, plaintiff, who was then 39 years old, filed an application for disability benefits alleging that he had been disabled since July 16, 2007 due to an on-the-job back injury that caused pain and functional limitations. [JS 2; Administrative Record ("AR") 125, 145]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because his severe physical impairments did not preclude plaintiff from performing work available in significant numbers in the national economy. [AR 6-20].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Severity finding**

Plaintiff contends that the ALJ erred in finding that plaintiff did not have a severe mental impairment.

The ALJ found that plaintiff had severe impairments consisting of degenerative disc disease of the lumbar spine and obesity, and that he had a non-severe mental impairment consisting of a mood disorder. [AR 11]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform light work. [AR 12].

A medically determinable impairment or combination of impairments is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)). To assess severity, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a); see Webb, 433 F.3d at 686. Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2. .

Plaintiff contends that the ALJ's severity finding is erroneous because he did not articulate legally sufficient reasons for rejecting the opinion of plaintiff's workers' compensation treating psychologist, Loren Green, Ph.D. Dr. Green initially evaluated plaintiff in October 2007, a few months after plaintiff sustained his allegedly disabling back injury at work. Dr. Green diagnosed major depressive disorder, single episode, moderate, and anxiety disorder, not otherwise specified ("NOS"). [AR 16, 336]. He assigned plaintiff a Global Assessment of Function ("GAF") score of 52, denoting moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)). [AR 337]. Dr. Green opined that plaintiff's psychological symptoms "have moderately interfered with some, but not all[,] major life and personal functions." [AR 338].

Dr. Green prescribed stress and pain management therapy. [AR 339, 417]. He also referred plaintiff to a psychiatrist for a medication evaluation. [AR 339, 418]. Plaintiff "was prescribed Prozac for depression, and the following medical foods: Sentra A.M. for cognitive symptoms, Sentra P.M. for sleep and depression, Gabadone for sleep and anxiety, and Theramine for pain and inflammation." [AR 418].

In an April 2008 follow-up report, Dr. Green diagnosed major depressive order, single episode, moderate; insomnia related to depressive disorder; sexual dysfunction, NOS. and anxiety disorder, NOS. [AR 16, 418]. Dr. Green opined that plaintiff's psychological condition was "permanent and stationary."[1]

---

[1] "[A] disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time. It does not mean total inability to work, but is an impairment of earning power caused by a mental or physical

3

1 He recommended that plaintiff continue his prescribed medication and use of biofeedback for stress and pain
2 management. [AR 418]. Dr. Green opined that plaintiff had impairments in work functions—such as the
3 ability to comprehend and follow instructions, perform simple and repetitive tasks, maintain an appropriate
4 work pace—that ranged from moderate (defined as a "marked impairment") to severe ("unable to perform
5 work function"). [AR 419-420]. He gave plaintiff a current GAF score of 46, denoting serious symptoms
6 or any serious impairment in social, occupational, or school functioning. DSM-IV Multiaxial Assessment
7 at 27-36. [AR 416].

8 Because Dr. Green's opinion was controverted by those of the examining and nonexamining source
9 opinions, the ALJ was required to articulate specific, legitimate reasons based on substantial evidence in
10 the record for rejecting it. The ALJ rejected Dr. Green's opinions because they were inconsistent with
11 plaintiff's medical records, "were opined for litigation purposes as part of his workers' compensation
12 claim," appeared to be dependent on plaintiff's unreliable subjective allegations, and were inconsistent with
13 examining source opinions and GAF scores. [See AR 16-17].

14 Plaintiff testified that he stopped working as a truck driver in 2007 due to a lower back injury, and
15 that his lawyer referred him for treatment, including mental health treatment, in connection with his
16 workers' compensation case. [AR 29-31, 477]. Standing alone, the fact that Dr. Green examined or treated
17 plaintiff for purposes of a workers' compensation claim is not a legitimate reason for rejecting his opinion.
18 See Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) (clarifying that the purpose for which a medical
19 report was obtained does not provide a legitimate basis for rejecting it in the absence of other evidence to
20 undermine its credibility). However, the ALJ correctly stated that the controlling issue in plaintiff's
21 workers' compensation case was whether he could return to his past job, and the ALJ agreed that he could
22 not. In that respect, the ALJ's decision is consistent with Dr. Green's opinion. [AR 16].

23 The ALJ also provided other legitimate reasons based on the record for rejecting Dr. Green's opinion
24 regarding plaintiff's mental functional abilities. He noted that Dr. Green's opinion was contradicted by the

---

26 condition." Edgar v. W.C.A.B., 65 Cal.App.4th 1, 10 (1998) (internal quotation marks and citations
27 omitted); see Cal.Code Regs., tit. 8, § 10152 ("A disability is considered permanent when the
employee has reached maximal medical improvement, meaning his or her condition is well
stabilized, and unlikely to change substantially in the next year with or without medical treatment.").
28

4

examining source opinions. [See AR 16-17]. In March 2008, the Commissioner's consultative psychiatric examiner, Ernest Bagner III, M.D., diagnosed a depressive disorder NOS and polysubstance abuse in remission. Dr. Bagner gave plaintiff a GAF score of 65, signifying a mild impairment or mild symptoms. [AR 385]. One year later, a workers' compensation "Qualified Medical Evaluator,"[2] psychiatrist Barbara Strong, M.D., diagnosed a mood disorder secondary to a general medical condition. Like Dr. Bagner, Dr. Strong gave plaintiff a GAF score of 65. [AR 597]. Dr. Goldman examined plaintiff about six months later, in October 2009. She diagnosed a depressive disorder NOS, alcohol and amphetamine dependence in full remission, and malingering. She concluded that plaintiff's "functional limitations were unable to be accurately assessed due to malingering." [AR 480].

The ALJ permissibly rejected Dr. Green's opinion because it was based in part on plaintiff's subjective psychiatric symptoms, which the ALJ found not credible due in part due to evidence that plaintiff was malingering and did not cooperate fully with his examiners. Plaintiff could understand and read English, obtained a high-school diploma at night school despite allegations of a learning disability, and completed specialized training for truck driving. [AR 27-28, 144, 151]. Nonetheless, plaintiff told the Commissioner's consultative psychologist, Dr. Goldman, that he could not recite the alphabet, and he made multiple errors counting backwards from 20 to 1. [AR 478, 151]. Asked to name the current President, he replied, "the Black man." [AR 478]. Testing of plaintiff's fund of information was "deferred due to poor effort." [AR 478]. His scores on the Wechsler Adult Intelligence Scale-Third Edition and the Wechsler Memory Scale-Third Edition were "extremely low," placing him in the bottom 0.2 percentile range or less on all scales. [AR 478-479]. If valid, plaintiff's verbal and performance I.Q. scores of 56 would fall below the score of 59 needed to establish mental retardation under the Listing of Impairments. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00D, 12.05B. No doctor suggested that plaintiff was mentally retarded or even had borderline intellectual functioning. Dr. Green and Dr. Strong found that plaintiff had average intelligence, and Dr. Green also found that plaintiff's fund of knowledge was appropriate. [AR 407, 553].

---

[2] A "Qualified Medical Evaluator" ("QME") means a physician licensed by the appropriate licensing body for the State of California and appointed pursuant to California Labor Code Section 139.2. Cal.Code Regs., tit. 8, § 1(z).

Plaintiff's scores on two other memory tests given by Dr. Goldman, the Test of Memory Malingering and the Rey 15-Item Memory Test-II, indicated that he was "attempting to simulate cognitive impairment." [AR 479]. Plaintiff "flat out refused to attempt" the Minnesota Multiphasic Personality Inventory-2 test ("MMPI-2") and "did not state why despite queries." [AR 479]. The MMPI is a "standardized personality measure[]" whose use the Commissioner has endorsed. See 20 C.F.R. Part 404,Subpart P, Appendix 1, § 12.00D (stating that the MMPI-2 "may provide useful data for evaluating several types of mental disorders"). The MMPI-2 also contains "an elaborate built-in mechanism to detect malingering," Lingo v. Sec'y of Health & Human Servs., 658 F. Supp. 345, 351 (N.D. Ohio 1986). Although Dr. Green also administered psychological tests, they were not the same tests used by either Dr. Goldman or Dr. Strong. In contrast to Dr. Goldman, Dr. Green did not indicate that any of those tests were designed to detect malingering.[3]

The ALJ noted that the record also contains other references to exaggeration. [AR 14]. The orthopedic Agreed Medical Examiner, Dr. Zarins, diagnosed "[s]uspect symptom embellishment/exaggeration/somatization disorder" and noted "multiple and significant findings of symptom magnification and exaggeration," including "excessive vocalization, grimacing, and hyperventilating." [AR 536]. The Commissioner's consultative orthopedist, Dr. Moazzaz, said that plaintiff "was noncompliant with many portions of the examination" and concluded that "[o]verall, his subjective complaints are greatly out of proportion to his objective findings." [AR 468]. Those findings are consistent with Dr. Goldman's conclusion that plaintiff was malingering. The ALJ's reliance on evidence of plaintiff's malingering and exaggeration to reject Dr. Green's treating source opinion was not error. See Sandgathe v. Chater, 108 F.3d 978, 980 (9th cir. 1997) (affirming the ALJ's rejection of a treating

---

[3] Dr. Green administered the following tests, several of which he described as self-assessment or self-reporting measures: Pain Patient Profile, Subjective Profile of Personal Effectiveness, IPAT Anxiety and Depression Scales, Pain Drawing Scan, Pain Management Symptom Checklist, Self-Evaluation Questionnaire, Insomnia Severity Index, and Sexual Functioning Questionnaire. [AR 408-415]. Plaintiff scored high for depression and anxiety. Dr. Green concluded that "[o]verall and from the findings, [plaintiff] was found cognizant of his physical and cognitive changes with inadequate coping ability." [AR 415].

Dr. Strong administered the Hamilton Depression Rating Scale and the Hamilton Anxiety Rating Scale. Plaintiff's results on both tests "indicat[ed] minimal symptomatology . . . ." [AR 554].

physician's opinion that was based on the claimant's self-reports, which the ALJ properly found to be exaggerated and unreliable); Taylor v. Astrue, 386 Fed.Appx. 629, 632 (9th Cir. 2010) (holding that where there was substantial evidence that the claimant had exaggerated the functional effects of a mental impairment, the ALJ properly rejected medical opinions based on the claimant's "discredited self-reporting").

The ALJ rationally inferred that plaintiff's testimony also cast doubt on the severity of his alleged mental impairment. [See AR 13-18]. Plaintiff said that because he was prescribed so much medication and it was "too much for me to take," he flushed some of his prescribed medication down the toilet, even though his doctor continued to prescribe it and told him it enhanced his other medication. [AR 13, 32-36]. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (stating that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant in assessing the credibility of subjective testimony). During his alleged period of disability, plaintiff's reported daily activities included performing household chores, running errands, shopping, some cooking, watching television, reading the Bible, attending church up to three times a week, and some door-to-door witnessing. [AR 13, 45-50, 178-185, 199-201, 384]. Plaintiff was able to drive. Twice a month he drove from Barstow to Las Vegas, a four-hour round trip, to pick up his grandson. [AR 13, 42-43]. Standing alone, plaintiff's daily activities are not highly probative, but they are one factor that the ALJ was permitted to consider. See Burch, 400 F.3d at 680-681 (holding that the ALJ did not err in discrediting the claimant's subjective complaints based in part on daily activities suggesting that the claimant was "quite functional," including caring for her own personal needs, cooking, cleaning, shopping, interacting with her nephew and boyfriend, and managing her finances).

The ALJ also relied on plaintiff's testimony that cast doubt on the credibility of his subjective presentation to his doctors. [See AR 13]. Plaintiff's attorney asked him about Dr. Goldman's conclusion that plaintiff had "a little bit of depression, and a history of drug use, and that you were faking everything." [AR 40]. Plaintiff replied: "My conclusion is, I'm pissed off, and I'm mad at the system. I just, I really don't care what they think. . . . I don't care what the psychiatrist thinks, because it's not my head that hurts." [AR 41]. Plaintiff also said that he was "scared to tell them what I think" because one doctor had run out of the

room and got another doctor when plaintiff said something about killing himself or others. [AR 41]. Plaintiff added that he "just played games with" another workers' compensation doctor, explaining "[h]e wanted to talk about me; I talked about him." [AR 41]. The doctor threatened to call the police, so plaintiff told him that "[j]ust to satisfy you . . . I won't kill myself." [AR 41].[4] Plaintiff called the Commissioner's orthopedic examiner, Dr. Moazzaz, an "idiot." [AR 14, 39]. That testimony suggests that there was a lack of candor or an element of manipulation in plaintiff's interactions with some physicians. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that the ALJ permissibly rejected the opinions of treating and examining physicians who relied on the claimant's subjective complaints where the ALJ made properly supported findings that the claimant had a tendency to exaggerate, made inconsistent statements, and was not fully cooperative during consultative examinations).

For the foregoing reasons, the ALJ did not err in rejecting Dr. Green's opinion and properly evaluated the medical evidence relevant to the nature and severity of plaintiff's mental impairment. The opinions of the examining physicians constitute substantial evidence supporting the ALJ's finding that plaintiff had mood disorder that was not severe.

**Credibility finding**

Plaintiff contends that the ALJ improperly rejected his subjective symptom testimony.

Absent affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If

---

[4] The treating and examining source reports do not indicate that plaintiff exhibited suicidal or homicidal ideation. [See AR 327, 385, 407, 477-478, 548-550, 553-554].

the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

As noted above, the record in this case contains affirmative evidence of malingering and exaggeration of both physical and mental symptoms. In making his negative credibility assessment, the ALJ permissibly took that evidence into account, along with plaintiff's daily activities, his inadequately explained failure to take his medication as prescribed, and a lack of objective evidence corroborating the alleged severity of his physical and mental subjective complaints. [AR 13-16]. <u>See</u> <u>Burch</u>, 400 F.3d at 680-681; <u>Tonapetyan</u>, 242 F.3d at 1148; <u>Bunnell</u>, 947 F.2d at 346.

**Lay witness testimony**

Plaintiff contends that the ALJ erred in rejecting a third-party function report written by plaintiff's wife.

While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)(quoting <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir.1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the medical evidence, inconsistencies between that testimony and the claimant's presentation to treating physicians during the period at issue, and the claimant's failure to participate in prescribed treatment. <u>See</u> <u>Greger</u>, 464 F.3d at 971; <u>Bayliss</u>, 427 F.3d at 1218; <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ noted that plaintiff's wife reported that plaintiff had limitations in his activities of daily living that were similar to plaintiff's own description of his limitations. [AR 14, 170-177]. The ALJ concluded that plaintiff's wife's statements were credible to the extent they were consistent with an RFC for light work. [AR 14]. The ALJ permissibly rejected her statements suggesting more severe limitations as unsupported by the medical records, one of the reasons he also relied upon to reject plaintiff's subjective testimony. Accordingly, there was no error in his rejection of plaintiff's wife's testimony. <u>See</u> <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693-694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [his wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane

reasons for rejecting her testimony."); Lewis, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

### Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

November 17, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge